UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

CHRISTOPHER G THOMAS             CIVIL ACTION NO. 21-cv-3452

VERSUS                                          JUDGE TERRY A. DOUGHTY

SHERIFFS OFFICE OF CADDO PARISH     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Christopher G. Thomas ("Plaintiff"), who is self-represented, filed this civil rights action based on various encounters he experienced with law enforcement authorities between 2017 and 2019. He named as defendants the Caddo Parish Sheriff's Office, Sheriff Steve Prator, and Deputies Earlton Parker, Roderick Perry, Chris Davis, James Norwood, and Donnie Laney. The court screened the complaint based on 28 U.S.C. § 1915A and determined that it warranted service on the defendants.

Before the court is the defendants' Motion to Dismiss (Doc. 32) on the grounds that the claims are either time barred or fail to state a claim on which relief may be granted. For the reasons that follow, it is recommended that the motion be granted with respect to all claims against all defendants except state and federal malicious prosecution claims against Deputies Parker and Perry related to February 2019 charges against Plaintiff for resisting arrest.

**Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion based on a defense of "failure to state a claim on which relief may be granted." To avoid dismissal for failure to state a claim, a plaintiff's complaint must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

**Relevant Facts**

Plaintiff filed an original complaint on September 27, 2021. He later filed several amended complaints. Docs. 1, 5, 7, 9, 12, 14, 15 & 17. Plaintiff's original complaint, filed on a court-provided form, indicated that the bases of his claims under 42 U.S.C. § 1983 are police brutality and false arrest based on events that took place on February 10, 2019. Plaintiff alleged that he was in a car accident, and the deputy who reported to the scene physically assaulted Plaintiff with his hands and feet. The deputy allegedly handcuffed Plaintiff's hands in a manner that "hurt badly," and Plaintiff was charged with resisting arrest because he complained of his discomfort and would not be quiet. Plaintiff also complained that items, including two cell phones and other personal property, were taken during the incident.

An accident report attached to the complaint includes Deputy Norwood's report that Plaintiff said he was driving when something ran out in front of him, either a deer or a squirrel, which caused him to lose control and hit an unknown object. The deputy wrote that it looked like the car hit a nearby bridge. An arrest report associated with the encounter stated that officers tried to conduct a pat down search of Plaintiff for weapons, but he tried to pull away. That resulted in the charges of resisting an officer and resisting an officer by force. Court minutes attached to the complaint show that the charges were dismissed by the prosecutor on October 26, 2020.

An amended complaint (Doc. 7) also elaborated on the February 2019 encounter with law enforcement after a car accident. Plaintiff alleged that Deputy Parker was the one who first approached him and asked him to step out of the vehicle. Parker applied handcuffs tightly. Deputy Perry then allegedly began punching Plaintiff in the back of his head and kicking him in his back. Plaintiff also alleged that, while in the police SUV on the way to the jail, the pain in his handcuffed hands was so great that he begged the deputies to loosen the handcuffs. They ignored his pleas.

Plaintiff also alleged in an amended complaint (Doc. 7) that in June 2018 he stopped at the Roberts Nance Park in Hosston to use the restroom. Deputy Chris Davis allegedly questioned Plaintiff because Plaintiff was in the park after dark. Davis ran Plaintiff's driver's license for warrants, and he then arrested Plaintiff on a 2017 warrant. An arrest report from the incident is attached to the original complaint. It states that Plaintiff was present in the park after dark when it was closed. The deputy arrested Plaintiff after he learned that there were active warrants for charges of possession of schedule I CDS and

possession of a firearm by a felon. Court minutes attached to the original complaint show that Plaintiff appeared in court a few days later on a charge of possession of schedule II CDS. The difference in the charges in the warrants and the minutes is not explained. The prosecutor eventually dismissed the charge on January 21, 2021.

Plaintiff alleges in an amended complaint (Doc. 7) that on July 17, 2017 his mother called and reported that the door to the family home was open and that some items were scattered in the yard. Plaintiff went to the home, which he said appeared to have been trashed by vandals. He discovered a copy of a search warrant on the living room floor. The warrant listed the names of Deputies Parker and Perry.

Plaintiff also alleged in that amended complaint that on February 9, 2019 he received a call from a neighbor who reported that sheriff's deputies had broken down Plaintiff's door and were inside his residence. Plaintiff alleged that he went to the home and discovered that it was badly damaged, with many of his possessions damaged or missing. A search warrant was found on the living room floor that listed Deputies Parker and Perry.

**Limitations Defense**

Defendants argue that all claims except Plaintiff's malicious prosecution claims are untimely. In assessing the limitations defense, it must be kept in mind that the statute of limitations is an affirmative defense that "places the burden of proof on the party pleading it." Frame v. City of Arlington, 657 F.3d 215, 239 (5th Cir. 2011). Under federal pleading requirements, "a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations." Id. at 239-40. That is why "defenses are generally not

the proper subject of Rule 12(b)(6) motions" and may be successful only if the grounds for the defense "clearly appear on the face of the plaintiff's complaint." Songbyrd, Inc. v. Bearsville Records, Inc., 104 F.3d 773, 776 (5th Cir. 1997). Dismissal under Rule 12(b)(6) based on statute of limitations is proper only "where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." Jones v. Alcoa, Inc., 339 F.3d 359, 366 (5th Cir. 2003).

Plaintiff's pleadings invoke Section 1983 and state law tort claims such as intentional infliction of severe emotional distress. With respect to claims based on state tort law, whether for battery, conversion of property, or otherwise, Louisiana law allows one year from an event to file a tort suit. La. Civ. Code art. 3492. The same is true with respect to federal claims brought under Section 1983. "The statute of limitations for section 1983 is supplied by state law, so Louisiana's one year prescriptive period applies." Heath v. Bd. of Supervisors for Southern University, 850 F.3d 731, 739 (5th Cir. 2017), citing Elzy v. Roberson, 868 F.2d 793, 794 (5th Cir. 1989). Most such claims (e.g., false arrest or excessive force) accrue at the time of the arrest or other underlying event, while a claim for malicious prosecution may not accrue until such time as criminal charges are resolved. Winfrey v. Rogers, 882 F.3d 187, 196-197 (5th Cir. 2018); Humphreys v. City of Ganado, 467 Fed. Appx. 252, 255-256 (5th Cir. 2012).

Plaintiff filed his original complaint in September 2021. His state and federal claims for excessive force, false arrest, conversion of property, intentional infliction of emotional distress, unlawful search, racial harassment, and the like are based on events that happened in 2017, 2018, and 2019. The dates of the relevant events are expressly alleged on the face

of the complaint and its exhibits, and Plaintiff waited far more than one year from each of those events to file his complaint. Plaintiff filed a response (Doc. 34) to the motion to dismiss, but he offered no argument regarding the timeliness challenge. The timeliness defense is supported on the face of the pleadings, and there are no apparent grounds for tolling or other exception to the limitations period, so all claims except those for malicious prosecution should be dismissed as untimely.

**Malicious Prosecution**

### A. Introduction

Plaintiff's amended complaints include lists of various legal claims or theories, with one of them being malicious prosecution. The pleadings do not, however, clearly explain the asserted factual basis for such a malicious prosecution claim under federal or state law. Defendants argue that Plaintiff has failed to allege facts to support an actionable claim and, in the alternative, Defendants are entitled to qualified immunity.

Plaintiff's only response (Doc. 34) was to (1) list the elements of malicious prosecution, (2) state that the claim is "typically based on a law enforcement officer's fabricating evidence, filing a false police report," or the like, and (3) cite <u>Thompson v. Clark</u>, 142 S.Ct. 1332 (2022), which said that the Court recognizes a Fourth Amendment claim under Section 1983 for malicious prosecution or unreasonable seizure pursuant to legal process. Plaintiff did not explain the basis for a claim under the facts he alleged.

### B. Elements Under Federal and State Law

Prior to <u>Thompson</u>, the Fifth Circuit held that "although there is no 'freestanding constitutional right to be free from malicious prosecution,' '[t]he initiation of criminal

charges without probable cause may set in force events that run afoul of explicit constitutional protection—the Fourth Amendment if the accused is seized and arrested, for example.'" Payton v. Town of Maringouin, 2022 WL 3097846, *3 (5th Cir. 2022), citing Winfrey v. Rogers, 901 F.3d 483, 491 (5th Cir. 2018) (quoting Castellano v. Fragozo, 352 F.3d 939, 953–54 (5th Cir. 2003) (en banc)). Winfrey held that the plaintiff had presented a cognizable Fourth Amendment claim because he was arrested pursuant to a warrant whose affidavit did not establish probable cause, and the criminal proceedings ended in his favor. Id. at 492–93, 495.

Thompson suggested that the elements of a Fourth Amendment claim under Section 1983 for malicious prosecution are (i) the suit or proceeding was instituted without any probable cause; (ii) the motive in instituting the suit was malicious, which is often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution terminated in the acquittal or discharge of the accused. Thompson, 142 S.Ct. at 1338.

Under Louisiana law, the elements of the tort of malicious prosecution are: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. Lemoine v. Wolfe, 168 So. 3d 362, 367 (La. 2015).

### C. Qualified Immunity

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." Morgan v. Swanson, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). The plaintiff must show (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. Morgan, 659 F.3d at 371. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." Kelson v. Clark, 1 F.4th 411, 416 (5th Cir. 2021), quoting Backe v. LeBlanc, 691 F.3d 645, 648 (5th Cir. 2012).

### D. Analysis

Plaintiff has not made clear which defendants he accuses of malicious prosecution. When assessing qualified immunity, each defendant's entitlement to immunity must be examined separately. It is improper to analyze a group of defendants' actions collectively. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir. 2007).

There are only two possible grounds for a claim against any defendant. Deputy Davis arrested Plaintiff in June 2018 when he encountered Plaintiff in a park after hours and determined that there was an outstanding warrant for Plaintiff on three charges. Plaintiff alleges that he had no knowledge of the warrant, and he contends that he did not

commit any crime to justify the warrant, but he does not allege that Deputy Davis lacked probable cause to seize him and make an arrest.

A police officer who makes an arrest on the basis of a facially valid arrest warrant will in most cases be entitled to qualified immunity. Vance v. Nunnery, 137 F.3d 270, 276 n. 3 (5th Cir. 1998). An exception may arise if the officer participated in securing the warrant and knows or has reason to know that the judge who issued the warrant was materially misled on the basis for a finding of probable cause. Wilson v. Stroman, 33 F.4th 202, 208 (5th Cir. 2022). Plaintiff does not allege that the arresting officer was involved in the application for the warrant that led to this arrest, so there is no factual basis for the potential exception. The facts alleged suggest only that Deputy Davis made an arrest based on a facially valid arrest warrant, and there is no specific allegation that Davis was motivated by any other reason to make the arrest. Accordingly, Davis and the other defendants are entitled to dismissal of any state or federal malicious prosecution claims based on this arrest.

The second potential basis for a malicious prosecution claim relates to Plaintiff being arrested for and charged with two counts of resisting arrest. Plaintiff alleged in his original complaint that he was beaten and arrested after his traffic accident. The deputies applied handcuffs tightly. "This hurt badly and I tried to tell the officer, but instead, I was given a resisting charge for complaining about the discomfort and not being quiet." Doc. 1, p. 4. The arrest report states that the resisting charges were because Plaintiff "tried to pull away" during a pat down. Plaintiff alleged in an amended complaint that Deputy Parker handcuffed him tightly and said that he was detaining him for his safety, Deputy

Perry punched and kicked him and said that Plaintiff was going to jail, and Deputy Norwood drove him to jail while ignoring his cries for help. The arrest report names Deputies Parker and Perry as the relevant officers.

Plaintiff's allegations, which must be accepted as true for current purposes, adequately alleged that Deputies Parker and Perry arrested him without cause and due to malice. The other elements of state and federal malicious prosecution claims are also alleged. Defendants argue that Plaintiff has, at best, alleged that the deputies made a mistake, but Plaintiff squarely alleges that he was charged with resisting arrest because he complained about his handcuffs being tight. Plaintiff's allegations are sufficient to defeat the motion to dismiss with respect to state and federal malicious prosecution claims against Deputies Parker and Perry but no other defendant. Those two defendants may challenge the claims by motion for summary judgment or other means.

**Sheriff's Office of Caddo Parish**

Plaintiff has listed as a defendant the Sheriff's Office of Caddo Parish or Caddo Parish Sheriff Department. A sheriff's office or sheriff's department is not a legal entity capable of being sued. Cozzo v. Tangipahoa Parish CouncilPresident Government, 279 F.3d 273, 283 (5th Cir. 2002); Walker v. Iberia Parish Sheriff Dept., 2007 WL 2127706 (W.D. La. 2007) ("Louisiana law affords no legal status to the "Parish Sheriff's Department" so that the department can sue or be sued, such status being reserved for the Sheriff."). The court should dismiss all such claims sua sponte. Raising the issue in this report and recommendation satisfies any procedural fairness requirements. Alexander v. Trump, 753 Fed. App'x 201, 208 (5th Cir. 2018).

Accordingly,

It is recommended that Defendants' Motion to Dismiss (Doc. 32) be denied with respect to state and federal malicious prosecution claims against Deputy Parker and Deputy Perry and be granted in all other respects. All claims against the other defendants should be dismissed with prejudice.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of October, 2022.

Mark L. Hornsby
U.S. Magistrate Judge