UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTOPHER G THOMAS | CIVIL ACTION NO. 21-cv-3452 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| SHERIFFS OFFICE OF CADDO PARISH | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Christopher G. Thomas ("Plaintiff"), who is self-represented, filed this civil rights action based on various encounters he experienced with law enforcement authorities between 2017 and 2019. The defendants filed a motion to dismiss on the grounds that the claims were time-barred or failed to state a claim on which relief may be granted. The court granted the motion in part and dismissed all claims except state and federal malicious prosecution claims against deputies Earlton Parker and Roderick Perry related to February 2019 charges against Plaintiff for resisting arrest. Docs. 36 & 40.

Defendants next filed a Motion for Summary Judgment (Doc. 48) that attacked the malicious prosecution claims on the merits and asserted qualified immunity. Plaintiff responded with his own Motion for Summary Judgment (Doc. 52). For the reasons that follow, it is recommended that both motions be denied.

**Background**

Deputy Parker and other members of a narcotics task force executed a search warrant at a residence associated with Plaintiff. Later that day, Parker encountered a car

parked off the highway and made a traffic stop. Plaintiff was the driver of the car. Parker called for his supervisor, Sgt. Perry, and by the end of their interaction with Plaintiff he was charged with resisting an officer and resisting an officer with force. The district attorney later dismissed the charges.

A party who asserts a Fourth Amendment malicious prosecution claim under 42 U.S.C. § 1983 must prove the threshold element of an unlawful Fourth Amendment seizure and the following elements: (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was the defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages. Armstrong v. Ashley, 60 F.4th 262, 279 (5th Cir. 2023).

Defendants state that they "do not dispute that Plaintiff was seized, nor do they dispute that elements (1) through (3) are satisfied." They argue that the claim is subject to summary judgment because it fails under at least elements (4) the absence of probable cause and (5) malice. Doc. 48-1, p. 17. Defendants do not directly attack Plaintiff's state law claim for malicious prosecution, but the elements of a Louisiana claim also require a showing of the absence of probable cause and the presence of malice. Lemoine v. Wolfe, 168 So.3d 362, 367 (La. 2015). Plaintiff asks that the court grant him summary judgment on both his state and federal malicious prosecution claims.

**Defendants' Summary Judgment Evidence**

Deputies Parker and Perry provide testimony in declarations made under penalty of perjury pursuant to 28 U.S.C. § 1746. Facts stated in such a declaration can be competent

summary judgment evidence. Hart v. Hairston, 343 F.3d 762, 764 n.1 (5th Cir. 2003); Cooper v. Fisher, 676 Fed. Appx. 355, 357 (5th Cir. 2017). The statute requires that the declaration be in substantially the form in the statute, which includes a statement that the declaration was "Executed on (date)." Neither Parker nor Perry dated their declarations, but they appear to otherwise be in substantial compliance with the statute, so their declarations will be accepted as competent evidence.

Deputy Parker states that he and other members of a narcotics task force executed a search warrant on a Vivian mobile home at around 3:15 p.m. on February 9, 2019. Nothing illegal was recovered, and the case was closed without further incident. (Parker does not say so, but the home was apparently associated with Plaintiff.) After finishing the search, Deputy Parker drove away in an unmarked sheriff's office vehicle. Around 4:45 p.m., while driving west on LA 2, he saw a silver Cadillac parked on the eastbound shoulder of the highway.

Deputy Parker states that he decided to initiate a traffic stop because the car was potentially parked on the shoulder in violation of La. R.S. 32:296, which prohibits leaving an unattended vehicle on any state highway shoulder except in an emergency, or La. R.S. 32:141, which prohibits motorists from stopping or parking a car on any state highway. He says that his decision to make a traffic stop was unrelated to the search warrant executed earlier that day, and he had no knowledge of who the driver or owner of the Cadillac was when he initiated the stop.

Parker states that he pulled behind the Cadillac, activated his emergency lights,[1] and made a radio call to his supervisor, Sgt. Perry. Parker then approached the car and spoke to the driver, who refused to give his name or provide a driver's license. The driver started yelling and said, "I know how you white officers are just stopping black males to kill them." Parker told the driver that he stopped him for parking so close to the roadway. The driver then said he had a wreck and was about to call 911. Parker asked if he was hurt or needed medical treatment, and the driver said no but he was scared that Parker was going to kill him. Parker said that he was there to help and assured the driver that he would not harm him. Parker asked again for a driver's license, and the driver replied, "I don't have to give you shit motherfucker."

Sgt. Perry soon arrived on the scene, where he saw a black male in the driver's seat of the Cadillac yelling at Deputy Parker and making comments about white officers killing black males. Perry said the driver's identity was also unknown to him when he arrived. After Perry arrived, Parker had the driver exit his car for officer safety. Parker states that as the driver got out of his car, the driver immediately shoved his right hand into his front right pocket. Parker grabbed his hand and told him to slowly remove it and place it on the side of the car. The driver did so, and Parker told him that he was going to pat him down for officer safety. The driver then removed his hands from the car and started turning toward Parker, who then shoved the driver's body into the side of his car.

---

[1] Neither side has provided any dash or body camera evidence to the court, so it is assumed no video evidence exists.

Deputy Parker states that the driver yelled and cursed at the officers "while trying to push himself off of the vehicle and in the process move both himself and me onto the Highway." Sgt. Perry states that the driver's actions appeared to be an attempt to push Deputy Parker backward into oncoming traffic on Highway 2, which was wet and had constant passing traffic. Perry felt all three of them were in a dangerous position. He told the driver to calm down, but the driver refused. Perry then grabbed the driver's right arm and used an arm-bar take down to get him on the ground behind his car and away from the roadway. Parker then secured the driver with handcuffs.

Parker says that he told the driver he was under arrest for resisting an officer, and the driver then said that his name was Christopher Thomas. Parker advised Plaintiff of his <u>Miranda</u> rights, and Plaintiff replied, "I don't give a fuck about my <u>Miranda</u> rights." Sgt. Perry states that Plaintiff started yelling, "Don't let the white man kill me. You are black and you are supposed to help me. Y'all know what y'all did to Trayvon Martin." Perry says that he repeatedly assured Plaintiff that the officers had no intention of harming him and, after a few minutes, Plaintiff calmed down and apologized. But when Plaintiff was told he was being arrested for resisting an officer, Plaintiff said, "I don't give a fuck, take me to jail." Perry says that it was at this point that Plaintiff provided his name.

Deputy Parker states that Plaintiff declared that he did not have anything illegal inside his car and consented to a search. During the search, officers saw heavy damage to the passenger side of the car. Nothing illegal was recovered from inside the car.

Two other deputies, James Norwood and Robert Chapman, soon arrived. Norwood escorted Plaintiff to his patrol vehicle to take him to Caddo Correctional Center. Plaintiff

Page 5 of 11

refused to place his legs in Norwood's vehicle so that the door could be shut. Chapman and Norwood, with Sgt. Perry's assistance, grabbed Plaintiff's legs and forced them into the backseat. After Plaintiff was secured in the vehicle, he began yelling that he was having a seizure. He was then taken to jail.

Deputy Parker states that his decision to arrest Plaintiff for resisting an officer was based on his belief that Plaintiff's refusal to provide Parker his name or driver's license was a violation of La. R.S. 14:108 (Resisting an officer). Parker decided to arrest Plaintiff for resisting an officer with force based on his belief that Plaintiff's efforts to push himself and Parker into the highway, while Parker was detaining him, amounted to using force against Parker and/or attempting to injure Parker in the performance of his duties, in violation of La. R.S. 14:108.2 (Resisting a police officer with force or violence). Parker states that his decision to arrest Plaintiff was based on Plaintiff's conduct prior to being handcuffed, and he did not decide to charge Plaintiff based on Plaintiff's later complaints that his handcuffs were too tight. Parker states that his decision to arrest Plaintiff was also "unrelated to the search warrant I executed earlier that day." Sgt. Perry states that he also believes that Plaintiff's actions constituted resisting an officer and resisting with force or violence, and he denies that the arrest was based on Plaintiff's complaints about his handcuffs being tight.

**Plaintiff's Evidence**

Plaintiff's motion for summary judgment attaches several pages of discovery responses served by the defendants, Google maps images of the scene of the incident, photos taken at the scene, and evidence of Plaintiff's attempts to obtain public records.

Plaintiff's Statements of Material Facts sets forth his version of the facts and cites to a number of the discovery responses and other documents. Defendants point out in their opposition (Doc. 54) that Plaintiff's allegations are often not supported by the documents he cites. Plaintiff did, however, end his submission with a declaration that: "These statements of Material Facts made herein are honest and true and are made under the penalties of perjury in accordance with State Laws and F.R.C.P. 56." Plaintiff then signed beneath that declaration. Like the Defendants, he did not date his declaration, but it appears to be in substantially the form required by Section 1746, which is "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." The statute states that the declaration is valid if it is in "substantially" that form. The court reads Plaintiff's declaration as subjecting him to penalty of perjury if his statements are found to be false, so his factual statements (even if not supported by the cited discovery responses) are competent summary judgment evidence.

    Plaintiff states in his declaration that on February 9, 2019 at 2:00 p.m. he was told by neighbors that police had knocked down his doors and were inside his home. He returned home and found a copy of a search warrant on his living room floor. He took pictures of his home because it and many of his possessions were damaged or missing.

    Plaintiff states that at 3:40 p.m. that afternoon he was driving his sister's car when he dodged a black cat that ran into the roadway, hydroplaned, and struck a green "Welcome to Hosston" sign with the passenger side of the car. Plaintiff states that he activated his emergency lights and drove 150 feet "upon to a" paved, gravel oilfield road that he says was "safety off HWY2." Plaintiff submits a Google Maps image of a short oilfield road,

along with a photo apparently taken of him standing with his hands behind his back near the entrance of that road. Doc. 52-6, pp. 424 & 426.

Plaintiff states that he was on the phone with his sister when a black car made a U-turn and pulled up behind him with flashing lights. Deputy Parker walked up to his door and ordered him to get off the phone. Parker asked whether Plaintiff had any drugs or weapons in the car. Plaintiff said no and explained that he had pulled off the highway because he had an accident. Deputy Parker "then asked the plaintiff to step out of the vehicle and had tightly handcuffed the plaintiff and ordered him to go stand behind his vehicle." Parker told plaintiff that he was detaining him for officer safety. Plaintiff walked to the back of the car, and when he looked back he saw that Parker "now had his gun pointing down but in the plaintiff's direction." Plaintiff says that he told Deputy Parker that he was too scared to move, and he expressed his concerns about recent events involving police killings.

Plaintiff states that during the encounter he and the Defendants "were all on the Drivers sides of the vehicle safely away from the fog-line, while traffic was passing them, on this 2-line and no Shoulder Graveled Oil-Field road off Hwy 2." Plaintiff states that he was on his knees when Sgt. Perry "punched the plaintiff in the back of his head and kicked him in the back Several times." Perry allegedly used the "N" word and told Plaintiff that he was "sick of the black excuse." Plaintiff states that he attempted to obtain patrol vehicle or body camera footage from any of the four deputies present at the scene, but it was not made available to him.

Plaintiff's sister and brother-in-law arrived at the scene. Plaintiff states that his sister, Cassandra Cole, was told that Plaintiff was going to jail and that the two phones found inside of the Cadillac would be seized as evidence. Plaintiff states that he was then taken to Officer Norwood's vehicle and tightly buckled with his handcuffed hands underneath his body. Plaintiff alleged that he "was crying and begging for the Officers to loosen his handcuffs because he could (not) take the pain." Plaintiff suggests that he lost consciousness during the encounter but can recall crying and begging Deputies Parker and Perry for help. The deputies ignored him "and left the plaintiff crying and hollering alone for 30 minutes" inside Norwood's vehicle. Norwood eventually took Plaintiff to jail.

Plaintiff states that he was charged with two crimes "because he complained about his state of discomfort." He states that he was detained for four days and, due to the incident, suffered mental distress, back and neck pain, nerve damage, loss of sobriety, loss of stable address, dismissal by his personal injury attorney, and difficulty standing, among other problems. He complains about damage to his home during the execution of the search warrant and the seizure of phones and other items from his car.

**Analysis**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the moving party makes such a showing, "[t]he non-moving party must then come forward with specific facts showing there is a genuine issue for trial." Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007). The court will "review evidence in the light most favorable to the nonmoving party, but conclusional allegations and

unsubstantiated assertions may not be relied on as evidence by the nonmoving party." Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).

Defendants' motion, which was very well done, presented detailed declarations that include specific descriptions of the events, which are supported by police reports and other documents attached to the declarations. Plaintiff's presentation is not as well drafted, but he offers competent summary judgment testimony that presents a version of the events that is significantly different from what is described by the deputies.

In Plaintiff's version of the events, he does not offer any resistance and allowed himself to be handcuffed for officer safety. The competing versions of the events requires an assessment of the credibility of the declarants, and that is not allowed in a summary judgment contest. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2513 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id.

Defendants assert qualified immunity, but the factual disputes also preclude summary judgment based on the defense. Tarver v. City of Edna, 410 F.3d 745, 754 (5th Cir. 2005) (dismissal at summary judgment phase inappropriate because determining whether officer's conduct was objectively unreasonable in light of clearly established law required fact finding and credibility assessments). If a jury were to credit Plaintiff's version of the facts, there would be no probable cause to arrest Plaintiff for resisting arrest, and the jury could reasonably infer malice from that absence of probable cause and Plaintiff's

testimony that the officers decided to charge him with resisting arrest only because he complained about his handcuffs. Considering the factual disputes in the competing evidence, summary judgment is not appropriate for any party.

Accordingly,

It is recommended that Defendants' Motion for Summary Judgment (Doc. 48) and Plaintiff's Motion for Summary Judgment (Doc. 52) be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of June, 2023.



Page 11 of 11

Mark L. Hornsby
U.S. Magistrate Judge